People ex rel. St. Thomas Orphan Asylum v. Glowacki.

PEOPLE *ex rel.* ST. THOMAS ORPHAN ASYLUM, appellants, v. GLOWACKI *et al.,* trustees, etc.

*School law — orphan asylums — share of in school fund — Laws 1850, ch. 261 — Mandamus.*

The act of 1850 (chap. 261), relating to distribution of school moneys to orphan asylums, applies to asylums incorporated since its passage, and asylums are entitled to share in money raised by tax in school districts as well as in that raised by the State.

In an application on behalf of an orphan asylum for a *mandamus,* to compel the trustees of a school district to pay to such asylum its share of the school money raised in such district, it appeared that no money had been raised by the district for the asylum, and that all the money in the hands of the trustees had been appropriated to specific purposes, and it did not appear that the asylum school had been taught by a duly authorized teacher. *Held,* that a *mandamus* ought not to issue.

APPEAL from an order denying an application for a mandamus. The necessary facts appear in the opinion.

*W. J. Sheridan* and *Thos. C. Montgomery,* for appellant.

*N. A. Woodward,* for respondent.

MULLIN, P. J.  The relator, an incorporated orphan asylum located in the village of Batavia, in the county of Genessee, moved at special term for a writ of mandamus, requiring the defendants, the trustees of a union school district in said village, to pay over to said asylum its share of the moneys applicable to the support of common schools in said district.

The affidavit served, for the purpose of the motion, set forth the number of children taught in said asylum in the years 1869, 1870, 1871 and 1872, and the average attendance in those years; the moneys received from the State by the trustees of said school district, and the amount raised by tax on the taxable property in said district; that the share of the asylum of such moneys has been demanded of the trustees of the district and refused. The asylum does not claim any share of the moneys appropriated to said district from the income of the common school fund. The moving affidavit also alleges that the asylum has been open to the inspection of the trustees of the district, and its managers have been willing to conduct the same in accordance with the rules and regulations of the common schools in said district, of which the trustees had notice.

An affidavit of the trustees of said school district was read in opposition to the motion, in which it is alleged that the amount of moneys raised by said district, for school purposes, is regulated by the trustees, who, pursuant to law, furnish to the inhabitants, at their meetings, an estimate of the sums required for the various purposes connected with the support of the said district school; that it is a misdemeanor to divert the moneys thus raised to any other purpose than that for which they are raised, and that no moneys have at any time been raised in said district for the said asylum, and the balance on hand in 1872 was appropriated to specific purposes, and cannot be appropriated to said asylum without subjecting the trustees to indictment and punishment for a misdemeanor. They further allege that the school kept in said asylum has not at any time been taught by a duly authorized teacher, and it is a misdemeanor to pay any part of the school moneys to the support of teachers not duly authorized to teach. They further allege that no report has ever been made by the asylum to them.

The affidavit of the school commissioner of the district in which said asylum is located alleges that the school kept in said asylum has not been taught by a teacher duly authorized to teach a school; that the asylum has never made any report to him, as school district

trustees are required by law to do, nor has he been informed that he was at liberty or desired to visit said school, or that it was subject to the rules and regulations of the common schools.

The special term denied the motion on the ground, it is said, that the duty imposed by the act of 1850, chapter 261 of the laws of that year, was laid upon the school commissioners for school commissioners' districts, and not upon the trustees of school districts.

The law referred to is in these words, viz.: "The schools of the several incorporated orphan asylum societies within this State, other than those in the city of New York, shall participate in the distribution of the school moneys in the same manner and to the same extent, in proportion to the number of children educated therein, as the common schools in their respective cities or districts."

The relator appeals from the order denying the motion.

I am very sure the counsel for the relator must have mistaken the learned judge as to the ground on which he denied the motion. The construction said to be given by him to the section substantially nullifies it. The commissioners have to do only with moneys appropriated to the support of schools by the State, and as the orphan asylums cannot share in any part of this income of the common-school fund, they could share only in the money raised by the tax imposed by the State for the support of schools. The amount to which the relator would be thus entitled would be so small as to be scarcely worth the trouble of collecting. If it cannot share, as it cannot under the construction suggested, in the money raised by tax in the district, the act referred to, under which a share is claimed is of no practical benefit to these institutions.

I entertain no doubt but that the act of 1850 was intended to and does apply to all asylums incorporated since as well as before the passage of that act. Nor do I doubt but that they are entitled to share in the moneys raised by tax in the district as well as in that raised by tax by the State. *St. Patrick's Orphan Asylum* v. *Board of Education of Rochester*, 34 How. 227; *People ex rel. Brooklyn Orphan Asylum* v. *Board of Education of Brooklyn*, see manuscript opinion of DENIO, J., in the court of appeals.

The mandamus was properly denied, upon the ground that it is not shown that the school kept in the asylum of the relator was taught, during any part of the time for which a share of the money is claimed, by a teacher legally qualified to teach.

The second section of the act of 1850 provides that "The schools

of said societies " (the orphan asylum) " shall be subject to the rules and regulations of the common schools in such cities or districts, but shall remain under the immediate management and direction of the said societies as heretofore." The act is silent as to the authority by which the rules and regulations by which the asylums are bound, are to be made or adopted. It is, however, certain that the provisions of the school law must be complied with so far as they are applicable.

Section 29 of the school act now in force declares, that " No district, or part of a district, shall be entitled " to any share of the moneys apportioned by the school commissioners, " unless the report of the trustees for the preceding " year shall show that a common school was supported " in the district; and taught by a qualified teacher, for such a term of time as would * * *. " entitle it to a distributive share." This section speaks of " *districts*," but it is a regulation that applies to all the districts of the State, and the asylums are, by the act of 1850, bound to conform to it.

Section 42 of the school law expressly forbids the application of any moneys apportioned to a district to the payment of the wages of an unqualified teacher. And, by the next section, it is made a misdemeanor for any trustee to apply, or direct, or consent to the applications of any such moneys to the payment of the wages of such teachers. These sections apply to moneys apportioned to a district, and not in terms to the moneys raised by tax in the district.

I cannot doubt but that the intention was to prohibit the payment of any money raised for school purposes to the payment of the wages of unqualified teachers. I entertain very serious doubts whether these asylums can receive any share of the school moneys, under existing laws, without the greatest injustice to the tax payers in the districts in which they are located.

The moneys raised by the State for common schools are distributed among the several districts in proportion to the number of scholars attending such school between the ages of 5 and 21 years. The number is ascertained from the report of the trustees of the districts, and unless all who are to be counted in ascertaining the portion to which a district is entitled are reported, the district is deprived of its just share to the extent of the omission. By section 61 of the school law, trustees are expressly forbidden to include in the number of children living in their district, between the ages of 5 and

21, any children who are supported in an orphan asylum or county poor house. It would be very oppressive to compel the appropriation for children for whom they receive nothing and are forbidden even to state the number of to the school commissioners.

DENIO, J., in his opinion, referred to *supra*, says the act contains no provision requiring the officers of the asylum to make returns, and they were not legally in fault for not making them, and suggests that they must ascertain as they best may the number of orphans in the asylum and other facts necessary to enable them to apportion the money, and because they do not, the relator should not lose the money to which it was entitled.

I apprehend the attention of the learned judge was not called to the prohibition just referred to against including children in orphan asylums in the number of children in their districts between 5 and 21 years of age. Had it been, I am quite sure he would not have sanctioned the injustice, as his opinion manifestly does.

It would seem to me that if the court must legislate to give effect to the act of 1850, it should require a report from the officers of the asylum containing the same matters required of the trustees of districts, and the commissioners and State superintendent might include in the apportionment the children that the trustees are forbidden to include in their report. In this way, and in this way only, can the injustice that would otherwise be done to the tax payers of a district be prevented.

A mandamus ought not to issue to compel the trustees of the district to pay their proportion to which the asylum may be entitled. They show they have not got it and are forbidden to pay it out, if they have it in hand, as it was raised for another and different purpose.

If they could now levy a tax on the districts to pay the money there might be no injustice in compelling them to do so. But they cannot raise a tax by their own authority, until a meeting of the inhabitants has been called and refused to vote the amount estimated to be necessary by the trustees.

It is very desirable that the defects in the law of 1850 should be remedied by legislation, and thus protect all parties from the injustice that must result from the attempt to enforce the law as it now is. The order appealed from is affirmed.

*Order affirmed.*